IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARCUS SINGLETON,

Petitioner,                                     OPINION AND ORDER

v.
                                                15-cv-355-wmc
JUDY SMITH,
Warden, Oshkosh Correctional Institution,

Respondent.

In 2012, a jury found petitioner Marcus Singleton guilty on two counts of child enticement in Dane County Case No. 11CF1543, for which he was sentenced to 4 years imprisonment to be followed by 7 years extended supervision. After losing a post-sentencing motion in trial court, Singleton filed and lost his direct appeal, as well as a subsequent petition in the Wisconsin Court of Appeals under *State v. Knight*, 168 Wis. 2d 509, 484 N.W.2d 540 (1992). He now seeks a writ of habeas corpus from this court under 28 U.S.C. § 2254, arguing that his conviction should be overturned for numerous reasons. The state filed an answer, along with records from the relevant state court proceedings, and both parties have submitted briefing, making the petition ripe for decision. For the reasons that follow, the court concludes that Singleton's petition must be denied.

FACTS[1]

In Dane County Case No. 11CF1543, Singleton was charged with two counts of child enticement under Wis. Stat. § 948.07(3). The underlying allegations accused Singleton of approaching two female minors, S.A. and T.C., as they were searching for worms to feed to a group of baby birds at a nature conservancy in Middleton, Wisconsin. Singleton invited the girls to accompany him to an area where he assured them they could find even more worms. The girls agreed, following Singleton to a sandy, heavily wooded location. In this new location, both girls later noted that they could not see the area from which they had come. As the girls were digging, Singleton exposed his genitals to them. The girls then fled and were eventually reunited with their families.

Singleton was tried and found guilty after a jury trial on both counts of child enticement in February 2012. After being sentenced to 4 years' incarceration and 7 years' extended supervision, Singleton filed a postconviction motion in trial court, arguing that the judge relied on inaccurate information in rendering sentence by speculating that Singleton may have an additional child victim in his own family. On direct appeal, the Wisconsin Court of Appeals summarily affirmed Singleton's conviction and sentence, concluding that the trial judge had not based the latter on any speculative criminal conduct, but rather on the gravity of the offenses and Singleton's character and criminal history. *See State v. Singleton*, 2013AP164-CR (Mar. 25, 2014). Singleton then filed a petition for review with the Wisconsin Supreme Court, which was denied.

Singleton later filed a *pro se* petition with the Wisconsin Court of Appeals seeking

---

[1] The following facts are taken from the petition and the state court records provided by petitioner and the state.

to reinstate his direct appeal rights under *Knight*, claiming ineffective assistance of appellate counsel for failing to argue that: (1) Singleton was denied his due process right to an impartial jury when a juror questioned the bailiff as to why the state did not have the victims identify Singleton; (2) the prosecutor committed intentional misconduct by making improper statements during his opening and closing; and (3) the evidence was insufficient to convict. (Dkt. #18-9.) The Wisconsin Court of Appeals denied the petition, concluding that none of the arguments Singleton raised were clearly stronger than the sentencing argument that his appellate counsel had originally made. *State ex rel. Singleton*, 2015AP8-W (Feb. 11, 2015) (dkt. #18-10). The Wisconsin Supreme Court denied Singleton's petition for review of that decision on May 11, 2015.

OPINION

In his pending habeas corpus petition, Singleton makes three arguments for relief: (1) insufficiency of the evidence; (2) prosecutorial misconduct for several statements the prosecutor made during trial; and (3) ineffective assistance of appellate counsel for failing to raise several arguments on direct appeal. The state argues that several of petitioner's claims are barred by the doctrine of procedural default and that, even if they are not, all of his claims should be dismissed on the merits. The court will address the question of default first, and then move on to petitioner's three reasons for claiming a right to relief.

I.    **Procedural Default**

Federal courts may not review a habeas petition unless the prisoner has fairly presented his claims "throughout at least one complete round of state-court review,

whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014); 28 U.S.C. § 2254(b)(1). This exhaustion requirement has two components: (1) the petitioner's claims must be exhausted, meaning that there is no remaining state court with jurisdiction to hear the claims; and (2) exhaustion must *not* be attributable to the petitioner's failure to comply with the state court system's procedural rules. *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). When the petitioner has already pursued his state court remedies but failed to present a claim properly to the highest available state court, that claim is barred by the doctrine of procedural default. *Perruquet*, 390 F.3d at 514.

Of his three arguments for relief, petitioner has at least exhausted his claim of ineffective assistance of appellate counsel, as this was the subject of his unsuccessful *Knight* petition in the Wisconsin Court of Appeals, which the Wisconsin Supreme Court refused to review. (Dkt. #18-9.) With respect to his other two arguments, however, the state legitimately argues that petitioner failed to raise his claims of prosecutorial misconduct and insufficiency of the evidence *directly* before the Wisconsin Court of Appeals. At most, he raised these claims indirectly by arguing in his *Knight* petition that counsel was ineffective in failing to assert prosecutorial misconduct and insufficiency of the evidence on appeal. While the state argues that petitioner failed to present these grounds for relief to the state appellate courts, but this argument merely reinforces petitioner's reason for asserting ineffective assistance of appellate counsel.

To "fairly present" a claim in state court, a petitioner must present "both the

operative facts and controlling law" relevant to his claim, as well as an analysis of the "constitutional nature of the claim." *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006). However, "an assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Said another way, "the fact that the ineffectiveness claim was raised . . . does not mean that the state court was given the opportunity to address the underlying issue that the attorney in question neglected to raise." *Id*. On the other hand, petitioner was proceeding *pro se* when he filed his *Knight* petition, and a *pro se* petitioner's filings is to be read generously. *Id.* Thus, in *Lewis*, the Seventh Circuit found that a petitioner had not defaulted, but had fairly raised a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), even though the *Brady* claim in his state court filings was found within the section titled "Ineffective Assistance of Trial Counsel." *Id.* at 1027.

In fairness, the *pro se* petitioner in *Lewis* had focused his *Brady* arguments on why evidence had been improperly destroyed, rather than on his attorney's ineffective assistance, while petitioner's arguments in his *Knight* petition are primarily focused on why he believed his counsel was ineffective, rather than on his underlying constitutional claims. Even so, the Wisconsin Court of Appeals *addressed* the merits of several of the claims underlying petitioner's ineffective assistance claims. *See State ex rel. Singleton*, 2015AP8-W (Feb. 11, 2015) (dkt. #18-10). Rather than parse which of the petitioner's claims were fairly presented to that court and which are procedurally defaulted, therefore, the court concludes that the cleanest method of adjudicating petitioner's claims is to

5

address the merits of each of his claims.  *See* 28 U.S.C. § 2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

## II.     Merits Review

Federal courts review the merits of a habeas petition under the guidelines of 28 U.S.C. § 2254(d).  Under that provision, a petitioner must show that the state court's adjudication of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Alternatively, a petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

The standard outlined in § 2254(d)(1) is exacting *and* "highly deferential," *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 15 (2013), demanding that state courts be given "the benefit of the doubt."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a past decision of the Supreme Court *or* reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000).  A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case.  *See Brown v. Payton*, 544 U.S. 133, 141 (2005).  This demanding standard authorizes relief only in cases "where there

is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 562 U.S. at 102.

In addition to this "formidable" barrier, *Titlow*, 134 S. Ct. at 16, a federal court reviewing a habeas petition under § 2254(d)(1) must "presume that the [state] courts' factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Taylor v. Grounds*, 721 F.3d 809, 817 (7th Cir. 2013) (citing 28 U.S.C. § 2254(e)(1)). As for § 2254(d)(2), a federal court may conclude that a state court decision was based on an unreasonable determination of the facts only "if it rests upon factfinding that ignores the clear and convincing weight of the evidence." *Id.* (quotation and citation omitted). While this factual standard is also demanding, it is not insurmountable. *Id.* Unfortunately for petitioner, however, none of his arguments overcome these high legal and factual hurdles.

### A.       Sufficiency of the Evidence.

As an initial matter, petitioner argues that the evidence against him was insufficient to support convictions for child enticement. In particular, he argues that the evidence was insufficient because: (1) the witnesses lied; (2) the girls could not have seen his genitals; and (3) he was never adequately identified as the perpetrator. The problem with petitioner's attack on the sufficiency of the evidence on federal habeas corpus review of a state court conviction is that this court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under that deferential standard, more than ample

evidence supports petitioner's conviction. Indeed, the Wisconsin Court of Appeals used a standard that mirrors that in *Jackson*, considered the same argument (in the context of petitioner's ineffective assistance claim), and found that there was no basis to support an argument that the evidence was insufficient to support his conviction. In doing so, the court correctly emphasized that "it is the jury's province to resolve any inconsistences in trial testimony." (Dkt. #18-10 at 6.)

This court also agrees with the Wisconsin Court of Appeals' assessment of the evidence. To convict petitioner of child enticement under Wis. Stat. § 948.07(3), there must be proof that he, with intent to expose a sex organ "to [a] child," "cause[d] or attempt[ed] to cause any child who has not attained the age of 18 years to go into any . . . secluded place." The evidence at trial included the following:

- *Petitioner's* own testimony that he "flash[ed] the girls" and "expose[d] his genitals" in the context of urinating in an area of the park not easily seen (dkt. #18-14 at 64);

- Testimony from the minor victims that an African-American male approached them while they were near a blacktop trail and offered to take them to a place where they could find worms, and then led them to a sandy area from which they could not see the blacktop trail (dkt. ##18-12 at 85-85, 18-13 at 92);

- Testimony from both of the victims that a man exposed his penis to them (dkt. ##18-12 at 88, 18-13 at 86-87);

- Testimony from a police officer that the area where petitioner exposed his penis was "secluded" (dkt. #18-13 at 57);

- Testimony from petitioner that he had taken a picture of the victims on his phone (dkt. #18-14 at 37); and

- Testimony from a witness who was walking with her husband in the nature conservancy and came upon two girls who were upset, yelling, crying and

screaming. The girls told the witness that a "creepy guy" had showed them his privates and said something about them coming with him. The witness then met the girls' grandmother and mother than waited with them until the police arrived (dkt. #18-12 at 41-44).

Like the Wisconsin Court of Appeals, this court concludes that this evidence was enough for a reasonable jury to find the essential elements of the offense charged beyond a reasonable doubt. Petitioner's arguments about whether the witnesses were lying are simply attempts to point out minor inconsistencies between the testimony. However, these minor inconsistencies do not undermine the jury's verdict. Similarly, his argument that he was never identified by either of the victims is meritless given his own admission that he *was* seen by the victims in a secluded place exposing himself, albeit he claims innocently. Based on this and other evidence admitted at trial, there was no reasonable question that petitioner was the person who had exposed himself to the victims. Accordingly, petitioner has failed to show that the jury's verdict was unsupported by sufficient proof or that the Wisconsin Court of Appeals unreasonably applied the *Jackson* standard in rejecting his challenge to the sufficiency of the evidence. Accordingly, petitioner is not entitled to relief on this claim.

### B. Prosecutorial Misconduct.

Petitioner also advances six claims of prosecutorial misconduct in his habeas petition: (1) the prosecutor improperly stated that Singleton did not need to be identified during the trial; (2) the prosecutor falsely claimed that the mother and aunt of one of the girls identified Singleton; (3) the prosecutor improperly appealed to the jurors' emotions with comments which comparing the victims' situation to the circumstances in

*Little Red Riding Hood*; (4) the prosecutor improperly commented on the girls' and Singleton's motives to lie; (5) the prosecutor mischaracterized an element of Wis. Stat. § 948.07(3), falsely claiming that Singleton could not prove that the area where he exposed himself was open to the public; and (6) the prosecutor improperly vouched for the girls' credibility based on their ages.

To achieve habeas relief, petitioner must demonstrate that the Wisconsin Court of Appeals misapplied clearly established federal law. The relevant legal standard here is set forth in *Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986). Under *Darden*, petitioner must show that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986). Thus, the court first asks under *Darden*, whether the challenged comments were improper; if so, then the court asks whether the comments prejudiced the defendant. *Bartlett v. Battaglia*, 453 F.3d 796, 800 (7th Cir. 2006). *Darden* identifies six factors a court should consider when determining whether the prosecutors' comments were prejudicial: "(1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut." *Howard v. Gramley*, 225 F.3d 784, 793 (7th Cir. 2000); *Darden*, 477 U.S. at 181-82. These factors "are not to be applied in a rigid manner, but should be used as a guide to determine whether there was fundamental unfairness that infected the bottom line." *Hough v. Anderson*, 272 F.3d 878, 903 (7th Cir. 2001).

Again, the Wisconsin Court of Appeals also cited and purported to apply the standard set forth in *Darden*. After reviewing each of petitioner's claims, the court of appeals concluded that none of the prosecutor's challenged remarks were improper or prejudicial. (Dkt. #18-10 at 5.) After review, this court agrees.

Petitioner's first claim of prosecutorial misconduct concerns a statement in closing meant to minimize the importance of the victims' not identifying Singleton as the perpetrator:

> And so we didn't ask every question we could have asked of these kids. And some of the things, like, you know, identification of the defendant, I mean, that's not even a dispute in this trial, and we don't waste time having to ask them to even look at the defendant.

(Dkt. #18-15:4-5.) This statement was neither improper nor prejudicial. At trial, the evidence confirms that identify was not, in fact, an issue. *Both* petitioner *and* his own counsel admitted that he had been near the victims, had taken a picture of them, and had exposed his genitals to them in a secluded area, although he claims to have been urinating innocently. (Dkt. #18-12:27-28.) Thus, the Wisconsin Court of Appeals correctly applied *Darden* in rejecting this claim.

Petitioner's second claim is that the prosecutor falsely stated in his closing argument that the relatives of the two girls identified him. The Wisconsin Court of Appeals rejected this claim as well, noting that the petitioner was mistaken in his characterization of the prosecutor's statements. (Dkt. #18-10 at 5.) After examining the trial transcript, this court agrees that the prosecutor was actually referring to the mother's and aunt's identification of both girls from a photograph on petitioner's phone rather

11

than identifying Singleton himself. (Dkt. #18-14:70.) Accordingly, the prosecutor's statement was not prejudicial at all, rather it was quite accurate.

Petitioner's third claim is that the prosecutor made inflammatory comments in his opening statement, which were designed to prejudice the jurors against him. More specifically, petitioner asserts that the following two comments comparing the girls' encounter with him to that of Little Red Riding Hood improperly prejudiced the jury against him.

> The Brothers Grimm, we all are familiar, wrote fairy tales, stories about children, for children. And, through these stories about witches and woods and wolves, we try to shield our children and we try to protect their innocence. Little Red Riding [sic], we all know, is one such story. It's a story of innocence lost, mistaken trust, dangers lurking amidst the beauty of nature. Ultimately, though, it's a story about a young girl's return from the wolf's jaws to safety, to the outside world, back to the security of her family, but forever changed, with a new adult perspective.
>
> ***
>
> On August 28th, 2011, just like Little Red Riding Hood, 11-year-old [S.A.] and 12-year-old [T.C.] ventured into the woods, the Middleton conservancy. They left. They escaped the woods, but they were forever changed.

(Dkt. #18-12 at 19-20.)

Unlike petitioner's other claims of prosecutorial misconduct, his objection to the Little Red Riding Hood analogy has some merit. The comparison was improper in the context of an opening statement, which should not include argument or editorializing by counsel, but rather outline what the lawyer expects the evidence will show during the course of the trial. *Testa v. Village of Mundelein, Ill.*, 89 F.3d 443, 446 (7th Cir. 1996).

That being said, the court also agrees with the Wisconsin Court of Appeals that, under the standard articulated by the U.S. Supreme Court in *Darden*, the prosecutor's use of this analogy in opening cannot be said to have "infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 180. On the contrary, in light of the weight of the evidence presented against petitioner at trial, the prosecutor's opening statement likely had little effect on the outcome of the case, except to the extent it proved an all too apt analogy as the evidence unfolded at trial. Moreover, the prosecutor's comments, although improper in an opening, were significantly less inflammatory than those at issue in *Darden*, yet the Supreme Court found those comments did *not* rise to the level of prosecutorial misconduct. 477 U.S. at 181 (finding that a prosecutor's comments comparing the defendant to an animal and wanting to see his face blown off with a shotgun did not rise to the level of prosecutorial misconduct). For all these reasons, the prosecutor's opening statements here did not amount to prosecutorial misconduct.

Petitioner's fourth claim is that the prosecutor inappropriately commented on the girls' superior credibility and Singleton's untrustworthiness. As to the former, petitioner points to the prosecutor's posing the following question to the jury: "Why would the girls lie about whether [Singleton] had shoes on?" (Dkt. #18-15:21.) As to the latter, petitioner claims that the prosecutor improperly discredited him by observing that he "ha[d] the same motive to lie that he did when he talked to" the police. (Dkt. #18-15:24.)

Frankly, both comments strike this court as appropriate argument. The applicable

federal law on this issue states that "prosecutor[s] may point out the absence of specific evidence of a motive to lie, but on the other hand, the prosecutor may not imply without evidence that [a witness] has special reasons to tell the truth." *United States v. Alexander*, 741 F.3d 866, 870 (7th Cir. 2014). The prosecutor's comments here satisfy the first requirement without violating the second. Although "a prosecutor may not vouch for the credibility of a witness by either expressing a personal belief in the truthfulness of a witness or implying that facts not before the jury lend credibility to a witness," a prosecutor is "free to invite the jury to draw a particular inference from th[e] evidence." *United States v. Collins*, 223 F.3d 502, 510-11 (7th Cir. 2000). Here, the prosecutor merely questioned what motive the girls would have had to lie, while pointing out that Singleton may be less trustworthy given his testimony that he lied to the police. This court, therefore, agrees that the Wisconsin Court of Appeals correctly applied federal law in rejecting his claim of prosecutorial misconduct. (Dkt. #18-15:24.)

Petitioner's fifth claim of misconduct is that the prosecutor mischaracterized the elements of Wis. Stat. § 948.07(3) by stating that "enticement" is not an element of the crime and that a public area can be secluded. (Dkt. #1-1:85-86.) However, neither is a mischaracterization of the law. The prosecutor was correct that "enticement" is *not* an element of Wis. Stat. § 948.07(3). Additionally, under Wisconsin law, an area *can* be simultaneously secluded *and* open to the public. *See State v. Pask*, 2010 WI App 53, ¶¶ 15-16, 324 Wis. 2d 555, 781 N.W.2d 751. Because petitioner has not shown that the prosecutor misstated the law, this claim also fails to establish misconduct.

Petitioner's sixth and final claim is that the prosecutor improperly vouched for the

victims' superior credibility due to their ages. This time, petitioner points to the following comment to support his argument:

> All [Singleton] had to do on that day was pretend he wanted to help [the victims] find worms. He didn't need toys. He didn't need gifts. And that caused them to go to that place because they thought he was being helpful. They took his bait. And maybe they feel stupid for it now, regret it, and they were thinking on the way that this feels wrong. But he seemed like a nice guy, seemed like he was gonna help them with what they wanted. He's the 28-year-old. They're the kids. We're not gonna punish them for feeling stupid about going with this man because he caused them to do it.

(Dkt. #18-15:10.)  Again, this is proper argument, although the last statement about allocating blame is odd. Regardless, the statement is simply *not* a specific commentary on the victims' credibility. Therefore, this final claim of prosecutorial misconduct also fails.

## C. Ineffective Assistance of Appellate Counsel.

Petitioner's last claim for relief is for ineffective assistance of appellate counsel, based on a failure to raise and preserve these same claims of insufficient evidence and prosecutorial misconduct just discussed above, as well as a claim that a juror was biased. Claims of ineffective assistance of counsel are analyzed under the long-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel *and* actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). To prevail on a claim against appellate counsel, therefore, petitioner must show both that appellate counsel failed to raise an obvious issue that is stronger than the other claims raised and that prejudice flowed from

15

this failure.  *Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010).  Prejudice exists if "there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Id.*

The Wisconsin Court of Appeals rejected petitioner's ineffective assistance claims on the grounds that none of the arguments he faulted his attorney for failing to make were clearly stronger than the claim that was raised.  (Dkt. #18-10.)  As a result, the central question is not whether this court "believes the state court's determination was incorrect but whether the determination was unreasonable -- a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007).  In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Youngblood v. Alvarado*, 541 U.S. 652, 664 (2004)).  In this way, the *Strickland* standard has been said to be "doubly deferential" on habeas corpus review.  *Id.*; *see also Richter*, 131 S. Ct. at 788 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "doubly so" when applied in tandem) (citations and quotations omitted).

Regardless of the strictness of the standard, the petitioner could not meet it here. First, this court has already concluded that petitioner's claims regarding insufficiency of the evidence and prosecutorial misconduct lack merit, so his claims that appellate counsel was deficient for failing to make these arguments necessarily fails.  As the Wisconsin Court of Appeals concluded, it was not deficient for appellate counsel to choose not to make weak arguments.  (Dkt. #18-10 at 4-5.)

This only leaves petitioner's arguments regarding a juror's bias. Petitioner argues that his appellate attorney was deficient in failing to argue that a juror showed bias in asking the bailiff why Singleton was not positively identified by a witness during trial. (Dkt. ##1:5; 1-1:77-79.) Petitioner argues that this occurrence demonstrates blatant jury bias and that his counsel should have raised the issue on direct appeal.

The Wisconsin Court of Appeals rejected this claim, finding that appellate counsel was not deficient for failing to raise this argument because petitioner's claim of juror bias "is premised on a juror's statement that could only favor" petitioner. (Dkt. #18-10 at 4.) "In essence," the court of appeals went on to explain "Singleton contends that the jury was biased by its doubt that Singleton was the perpetrator, since the victims had not identified him in court." *Id.* That court concluded appellate counsel could not be found deficient for failing to make such an argument, as such an argument was not clearly stronger than the sentencing argument that was raised.

This court again agrees with the Wisconsin Court of Appeals' analysis. Petitioner does not explain *why* he believes this would have been a strong argument for his appellate counsel to make; nor does he suggest that his trial counsel should have moved to remove the juror for alleged bias. As the court of appeals' pointed out, such a request would have made no sense given that the juror was questioning whether petitioner had been adequately identified. Under these circumstances, the appellate attorney's decision not to raise this argument was far from ineffective; it was wise.

## III.    Certificate of Appealability.

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue

or deny a certificate of appealability when entering a final order adverse to petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, the court concludes that all of petitioner's claims lack merit. Because reasonable jurists would not otherwise debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED that petitioner Marcus Orlando Singleton's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED and this matter is DISMISSED. A certificate of appealability is DENIED. If petitioner wishes he may seek a certificate from the court of appeals under Fed. R. App. P. 22.

Entered this 6th day of July, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge